UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGIONS 3 and 9
Maggie McGee, Esquire
One Newark Center, Suite 2100
Newark, NJ 07102
Telephone: (973) 645-3014
Facsimile: (973) 645-5993
Email: Maggie.McGee@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re<br><br>Jeremias Batista,<br><br>Debtor. | |
| In re:<br><br>ANDREW R. VARA,<br>United States Trustee, Regions 3 and 9,<br><br>Plaintiff,<br>v.<br><br>Jeremias Batista,<br>Defendant. | Misc. Proc. No. 22-00101 MBK<br><br>The Honorable Michael B. Kaplan, Chief, U.S.B.J<br><br>Hearing Date: December 15, 2022 at 10:00 a.m. |

**CERTIFICATION OF TINA OPPELT IN SUPPORT OF MOTION BY THE UNITED STATES TRUSTEE FOR AN ORDER COMPELLING JEREMIAS BATISTA TO PRODUCE DOCUMENTS AND/OR ADDITIONAL RESPONSES TO INTERROGATORIES**

The United States Trustee, by and through counsel, in furtherance of his duties and responsibilities under 28 U.S.C. § 586(a)(3) and (5), hereby respectfully moves for an Order compelling Debtor to produce documents and/or additional responses to interrogatories.

1

I, Tina Oppelt, of full age, hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I am employed as a paralegal by the Office of the United States Trustee ("OUST") in Newark, New Jersey. My knowledge of the matters addressed in this certification is derived from my review of the case docket and documents contained therein.

2. On March 11, 2022, the Plaintiff filed a complaint against Defendant seeking return of fees, voiding or canceling contracts between Defendant and his clients, civil penalties, and injunctive relief. ECF No. 1.

3. On July 26, 2022, Plaintiff served Defendant with a Request for Production of Documents and Interrogatories.

4. On August 24, 2022, Defendant's counsel e-mailed Plaintiff's counsel requesting until September 23, 2022 to produce the documents and respond to the interrogatories and Plaintiff's counsel agreed to the extension.

5. On September 21, 2022, Defendant's counsel requested an additional extension to September 30, 2022 to complete the discovery responses to which counsel for Plaintiff agreed.

6. On September 30, 2022, Defendant produced some documents and responded to the interrogatories.

7. Defendant produced no documents responsive to document requests numbers 1 through 3, in which Plaintiff asked for: Request No. 1 - an accounting of fees paid by each debtor identified in Exhibit 1 of the complaint; Request No. 2.- all documents relating to payments made to Defendant and Fresh Start Funding ("FSF") from each debtor identified in Exhibit 1 of the Complaint; and Request No. 3 - all documents relating to payments received by Defendant from FSF.

8. Defendant produced no documents responsive to Requests 5 through 11, which

requests include: Request No. 5- all documents relating to the accounts receivable managed by FSF and debtors identified in Exhibit 1 of the Complaint; Request No. 6- all documents relating to bank accounts used in connection with the operation of Mr. Batista's law firm between January 2019 and June 2021; Request No. 7- all documents relating to collection efforts mad against any debtor identified in exhibit 1 of the Complaint; Request No. 8 - all documents relating to debtors identified on Exhibit 1 of the Complaint who did not qualify for FSF's "program"; Request No. 9 -all documents relating to FSF's underwriting guidelines; Request No. 10- all documents relating to defendants response to the interrogatory which corroborates Defendant's statements that his clients had the ability to pay his fees; and Request No. 11-all documents relating to Defendant's filing of amended documents after receiving updated information as described in paragraphs 42 and 43 of the Complaint and Defendant's answer thereto.

9. Defendant failed to produce any documents response to request no. 13 which asks for all documents corroborating his denial of the fee range typically charged in flat fee cases.

10. Defendant failed to produce any documents in response to request no. 14, which asks for all documents evidencing the "different services, communications and task" as set forth in defendant's answer to the Complaint, warranting fees in excess of $2,800 or more.

11. Defendant failed to produce any documents in connection with request no. 15 which asks for all non-privileged documents relating to Defendant's representation of the debtors identified in Exhibit 1 and 2 of the complaint, objecting that the request is overbroad, not relevant, and would not lead to admissible evidence, was excessive, and the burden on Defendant outweighed any benefit to Plaintiff.

12. Defendant failed to produce any documents response to Request No. 17, which asks for all document relating to the payment of the filing fee identified in Exhibit 1 of the Complaint.

13. Defendant failed to produce any documents responsive to request no. 18, which asks for all documents relating to Defendant's practices and procedures in representing chapter 7 debtors, objecting on the grounds that the request is vague and ambiguous, overbroad, unduly burdensome, disproportional to the needs of the case, and indicating he had no such documents.

14. On October 19, 2022, Plaintiff's counsel requested a meet and confer regarding the deficiency of the document production. Due to scheduling conflicts, counsel did not hold a meet and confer until October 31, 2022.

15. On November 3, 2022, Plaintiff's counsel sent Defendant's counsel an e-mail memorializing the agreement reached at the meet and confer, requiring all of the documents identified below to be produced by November 15, 2022 and which stated, in part, as follows:

   a. With respect to the request for documents nos. 1-5, Mr. Batista will provide an accounting of the amount of loans obtained from FSF, payments made on those loans, and provide any statements he received from FSF during the time period identified in the document production.

   b. With respect to request for documents no. 6, Mr. Batista will provide bank statements from bank account(s) used in connection with funds received from FSF for the time period requested.

   c. With respect to request for documents no. 7 and 8, Mr. Batista will provide any e-mails or other communications from clients with regard to any payments made or to be made to FSF.

   d. With respect to request for documents no. 10, Mr. Batista will confirm that the U.S. Trustee has all documents that he has in his possession regarding each debtor's ability to pay as determined at the time of filing. During our discussion you indicated that one of the pre-conditions to qualifying for bifurcation via FSF may have been the existence of a bank account. If so, Paragraph 40 of the complaint identifies 15 cases where the fees were bifurcated, and the collection of fees assigned to FSF, but the schedules failed to identify a bank account. [Plaintiff] wants any and all documents related to whether these debtors had bank accounts and whether [Defendant] knew they had bank accounts prior to the filing their petitions. Of course, we also want to know all of the pre-conditions to qualifying for bifurcation and assignment of collection to FSF. Hopefully, we will get those soon from FSF.

e. With respect to request for documents no. 11, [Defendant] will provide all documents and/or a privilege log indicating the basis for asserting the privilege. In that regard, [Plaintiff]… cites to you the seminal case with respect to attorney client privilege in bankruptcy cases, i.e., in the bankruptcy context, the right to assert the attorney-client privilege is narrowed. In exchange for the protections provided by the Bankruptcy Code, debtors are obligated to disclose all of their assets and liabilities. U.S. v. White, 950 F.2d 426, 430 (7th Cir. 1991). These disclosures are necessary to ensure that bankruptcy relief is accorded only to the honest and compliant debtor. Id. A debtor has no reasonable expectation that information will be kept confidential if it must be disclosed in bankruptcy filings and where the debtor has no reasonable expectation of confidentiality, the attorney-client privilege is unavailable. Id. Thus, information disclosed to an attorney for the assembly of a bankruptcy petition and schedules does not fall within the scope of the attorney-client privilege.

f. With respect to request for documents no. 12, [Defendant] will provide all non-privileged documents requested relating to the Alward matter and/or a privilege log indicating the basis for asserting the privilege. These requests include all electronic data, including e-mails, as well as documents maintained in paper form.

g. With respect to request for documents no. 14, [Defendant] will provide all requested;

h. With respect to request for documents no. 15, [Defendant] will provide all non-privileged documents in connection with all 141 cases. We agreed that I would review all electronically maintained files to be supplied via e-mail, disc, drop-box, or any other file sharing mechanism, after [Defendant] has removed any privileged data. Of course, we will want a privilege log in connection with this production request. Once [Plaintiff has] reviewed the electronic data we will discuss whether there is a need to review the paper files [Defendant] maintains and how that will be accomplished, including an in person review of each file by our office.

i. With respect to request for documents no 17, [Defendant] will provide bank statements and credit card statements evidencing how the filing fees were paid.

j. With respect to request for documents no. 18, Mr. Batista will provide any forms he uses in preparing bankruptcy documents for filing, such as form requests for information provided or other forms he uses in connection with the preparation of petitions, schedules, and statement of financial affairs.

16. On November 18, 2022, Defendant's counsel responded to requests by Plaintiff's counsel for the additional document requests stating, in part, as follows:

a. [Defendant] isn't in possession of accounting documents regarding the FSF loans and client payments. While those aren't totally inaccessible, they're encompassed within the subpoena directed to Fresh Start, and accordingly all documents

5

responsive to that request should be produced by Fresh Start.  As to your mention of Mr. Garrison accepting service on September 2, I'm not aware whether he did; once I put your office in touch with Mr. Garrison, I stepped out of the loop.  If Fresh Start hasn't responded to the subpoena yet, I'll be glad to do what I can to facilitate getting them to respond, but I need to reiterate what I previously told you – I don't represent Fresh Start.  If you can send me a copy of Fresh Start's acceptance, so that I have some basis to tell them what you believe their response obligation/deadline is or was, I'll get in touch with them.  In the meantime, here's a link to numerous documents that I believe are both responsive to item one and RFP 1-5, and I believe were previously produced.

b. In regard to item number 2 below, [Defendant] is still pulling together account information, but assured me he can get it to me in time for me to turn it around to you within a week from today.  [Defendant] did agree to do my best to get you those by the 15th, but I underestimated the task; I now have [Defendant's] best estimate and promise to get those documents to me, and I'll turn them around to you immediately when I receive them within the next week.

c. There are no documents responsive to item number 3 in [Defendant's] possession. Any communications from clients about payments, would have been directly between the clients and Fresh Start.

d. In regard to item 4 below and RFP #10, [Defendant] has no documents in his possession that are responsive to RFP #10.  Relevant information was passed along to [Defendant] verbally by his clients, and all such information ended up in the documents filed in the respective clients' bankruptcy cases, whether filed initially or by amendment/supplement.  To the extent that relevant information you mention in item #4 below is in FSF's possession, again, I'll be glad to see if I can facilitate some response, but I need to be able to tell Fresh Start what their service date and response date was for any subpoena, so please pass along any acceptance of service by Fresh Start.

e. In regard to item number 5 below, [Defendant] will not be withholding any documents under a claim of privilege.  [Defendant] is checking his files, but believes no further documents exist.  When information was presented to him by the client, that information ended up in a supplemental filing, and he doesn't have any other documentation than what ended up filed with the court.

f. In regard to item number 6, all documentation relative to the Alward matter was appended to [Defendant] motion to reopen the case.  I can access that ECF docket, download the motion to reopen, and produce to you the exhibits to that motion, if necessary, but those exhibits are the only documentation Mr. Batista has that are responsive to RFP #12.  Let me know if you need me to do that.

g. As to your item #7 below and RFP #14, [Defendant] is double checking his files but believes there is no further documentation relative to the fees in excess of what a routine case and fee might be.  The information demonstrating the higher fee

6

      charged in those cases, was provided by his clients through various personal meetings, and that information is included in the schedules and other filings in their bankruptcy cases. Again, [Defendant] is double checking his files and I expect a follow up answer from him within the week.

h. In regard to your item #8 below and RFP 15, I renew the objection set forth in our response to RFP #15. The request is so broad that it subsumes all others, seeking every single document imaginable that might somehow relate to 141 cases. I'm prepared to discuss any reasonable narrowing of this request to what might truly be needed, relevant to this dispute, and reasonable in light of [Defendant's] moderate means, but I believe a document request that is essentially "everything, just everything" is simply objectionably overbroad.

i. In regard to item #9 below, [Defendant] is obtaining credit card statements regarding the payment of filing fees. My understanding is that those credit card accounts were also used for charges utterly unrelated to any case at issue in regard to the trustee's motion, so the statements need to be reviewed and possibly redacted. Within the next few days, I'll have a more solid timeline from [Defendant] on how quickly he can get that done and the statements produced.

j. In regard to item #10 below, there are no additional responsive documents in Mr. Batista's possession. He prepared statements and schedules with clients during in-person meetings, and any informal notes that may have been involved were discarded after the information was input into the statements and schedules that were eventually filed.

    I, hereby, certify that the foregoing statements made by me are true and I acknowledge that if any of the foregoing statements are willfully false, I may be subject to punishment.

                                                    By: */s/ Tina Oppelt*
                                                        Tina Oppelt
                                                        Paralegal

Dated: 11/23/2022