UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGIONS 3 and 9
Maggie McGee, Esquire
One Newark Center, Suite 2100
Newark, NJ 07102
Telephone: (973) 645-3014
Facsimile: (973) 645-5993
Email: Maggie.McGee@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re<br><br>Jeremias Batista,<br><br>Debtor. | |
| In re:<br><br>ANDREW R. VARA,<br>United States Trustee, Regions 3 and 9,<br><br>Plaintiff,<br>v.<br><br>Jeremias Batista,<br>Defendant. | Misc. Proc. No. 22-00101 MBK<br><br>The Honorable Michael B. Kaplan, Chief, U.S.B.J<br><br>Hearing Date: December 15, 2022 at 10:00 a.m. |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY THE UNITED STATES TRUSTEE FOR AN ORDER COMPELLING JEREMIAS BATISTA TO PRODUCE DOCUMENTS AND/OR ADDITIONAL RESPONSES TO INTERROGATORIES**

Andrew R. Vara, United States Trustee for Region 3 and 9 ("Plaintiff"), by and through counsel, respectfully submits this memorandum of law in support of the motion by the United States Trustee for an order compelling Jeremias Batista (“Defendant”) to produce documents and provide additional responses to Plaintiff’s interrogatories.

**STATEMENT OF FACTS**

1. On March 11, 2022, the Plaintiff filed a complaint against Defendant seeking return of fees, voiding or canceling contracts between Defendant and his clients, civil penalties and injunctive relief. ECF No. 1. *Certification of Tina Oppelt in Support of Motion by the United States Trustee for an Order Compelling Debtor to Produce Documents ("Oppelt Certification")* ¶ 2.

2. On July 26, 2022, Plaintiff served Defendant with a Request for Production of Documents and Interrogatories. *Oppelt Certification* ¶ *3.*

3. On August 24, 2022, Defendant's counsel e-mailed Plaintiff's counsel requesting until September 23, 2022 to produce the documents and respond to the interrogatories and Plaintiff's counsel agreed to the extension. *Oppelt Certification* ¶ 4 .

4. On September 21, 2022, Defendant's counsel requested an additional extension to September 30, 2022 to complete the discovery responses to which counsel for Plaintiff agreed. *Oppelt Certification* ¶ *5* .

5. On September 30, 2022, Defendant produced some documents and responded to the interrogatories. *Oppelt Certification* ¶ 6 .

6. Attached hereto as Exhibit A is a chart setting forth: 1) the documents requested by Plaintiff; 2) Defendant's initial response; 3) the agreement reached between Plaintiff and Defendant after a meet and confer was held on October 31, 2021; and 4) the supplemental response received by Defendant on November 18, 2022.

7. Attached hereto as Exhibit B is a chart setting forth: 1) the interrogatories Plaintiff believes should be supplemented given the lack of documents provided substantiating the responses; 2) Defendant's responses to the interrogatories subject to dispute; and 3) Plaintiff's explanation as to why further responses should be compelled.

8. Defendant produced no documents responsive to document requests numbers 1 through 3, in which Plaintiff asked for: Request No. 1 - an accounting of fees paid by each debtor identified in Exhibit 1 of the complaint; Request No. 2.- all documents relating to payments made to Defendant and Fresh Start Funding ("FSF") from each debtor identified in Exhibit 1 of the Complaint; and Request No. 3 - all documents relating to payments received by Defendant from FSF. *Oppelt Certification* ¶ 7.

9. Defendant produced no documents responsive to Requests 5 through 11, which requests include: Request No. 5- all documents relating to the accounts receivable managed by FSF and debtors identified in Exhibit 1 of the Complaint; Request No. 6- all documents relating to bank accounts used in connection with the operation of Mr. Batista's law firm between January 2019 and June 2021; Request No. 7- all documents relating to collection efforts mad against any debtor identified in exhibit 1 of the Complaint; Request No. 8 - all documents relating to debtors identified on Exhibit 1 of the Complaint who did not qualify for FSF's "program"; Request No. 9 -all documents relating to FSF's underwriting guidelines; Request No. 10- all documents relating to defendants response to the interrogatory which corroborates Defendant's statements that his clients had the ability to pay his fees; and Request No. 11-all documents relating to Defendant's filing of amended documents after receiving updated information as described in paragraphs 42 and 43 of the Complaint and Defendant's answer thereto. *Oppelt Certification,* ¶ 8 .

10. Defendant failed to produce any documents response to request no. 13 which asks for all documents corroborating his denial of the fee range typically charged in flat fee cases. *Oppelt Certification* ¶ 9.

11. Defendant failed to produce any documents in response to request no. 14, which asks for all documents evidencing the "different services, communications and task" as set forth in defendant's answer to the Complaint, warranting fees in excess of $2,800 or more. *Oppelt*

*Certification* ¶ 10.

12. Defendant failed to produce any documents in connection with request no. 15 which asks for all non-privileged documents relating to Defendant's representation of the debtors identified in Exhibit 1 and 2 of the complaint, objecting that the request is overbroad, not relevant, and would not lead to admissible evidence, was excessive, and the burden on Defendant outweighed any benefit to Plaintiff. *Oppelt Certification* ¶ 11.

13. Defendant failed to produce any documents response to Request No. 17, which asks for all document relating to the payment of the filing fee identified in Exhibit 1 of the Complaint. *Oppelt Certification* ¶ 12.

14. Defendant failed to produce any documents responsive to request no. 18, which asks for all documents relating to Defendant's practices and procedures in representing chapter 7 debtors, objecting on the grounds that the request is vague and ambiguous, overbroad, unduly burdensome, disproportional to the needs of the case, and indicating he had no such documents. *Oppelt Certification* ¶ 13.

15. On October 19, 2022, Plaintiff's counsel requested a meet and confer regarding the deficiency of the document production. Due to scheduling conflicts, counsel did not hold a meet and confer until October 31, 2022. *Oppelt Certification* ¶ 14.

16. On November 3, 2022, Plaintiff's counsel sent Defendant's counsel an e-mail memorializing the agreement reached at the meet and confer, requiring all of the documents identified below to be produced by November 15, 2022 and which stated, in part, as follows:

a. With respect to the request for documents nos. 1-5, Mr. Batista will provide an accounting of the amount of loans obtained from FSF, payments made on those loans, and provide any statements he received from FSF during the time period identified in the document production.

b. With respect to request for documents no. 6, Mr. Batista will provide bank statements from bank account(s) used in connection with funds received from FSF for the time period requested.

c. With respect to request for documents no. 7 and 8, Mr. Batista will provide any e-mails or other communications from clients with regard to any payments made or to be made to FSF.

d. With respect to request for documents no. 10, Mr. Batista will confirm that the U.S. Trustee has all documents that he has in his possession regarding each debtors ability to pay as determined at the time of filing. During our discussion you indicated that one of the pre-conditions to qualifying for bifurcation via FSF may have been the existence of a bank account. If so, Paragraph 40 of the complaint identifies 15 cases where the fees were bifurcated, and the collection of fees assigned to FSF, but the schedules failed to identify a bank account. [Plaintiff] wants any and all documents related to whether these debtors had bank accounts and whether [Defendant] knew they had bank accounts prior to the filing their petitions. Of course, we also want to know all of the pre-conditions to qualifying for bifurcation and assignment of collection to FSF. Hopefully, we will get those soon from FSF.

e. With respect to request for documents no. 11, [Defendant] will provide all documents and/or a privilege log indicating the basis for asserting the privilege. In that regard, [Plaintiff]… cites to you the seminal case with respect to attorney client privilege in bankruptcy cases, i.e., in the bankruptcy context, the right to assert the attorney-client privilege is narrowed. In exchange for the protections provided by the Bankruptcy Code, debtors are obligated to disclose all of their assets and liabilities. U.S. v. White, 950 F.2d 426, 430 (7th Cir. 1991). These disclosures are necessary to ensure that bankruptcy relief is accorded only to the honest and compliant debtor. Id. A debtor has no reasonable expectation that information will be kept confidential if it must be disclosed in bankruptcy filings and where the debtor has no reasonable expectation of confidentiality, the attorney-client privilege is unavailable. Id. Thus, information disclosed to an attorney for the assembly of a bankruptcy petition and schedules does not fall within the scope of the attorney-client privilege.

f. With respect to request for documents no. 12, [Defendant] will provide all non-privileged documents requested relating to the Alward matter and/or a privilege log indicating the basis for asserting the privilege. These requests include all electronic data, including e-mails, as well as documents maintained in paper form.

g. With respect to request for documents no. 14, [Defendant] will provide all requested;

h. With respect to request for documents no. 15, [Defendant] will provide all non-privileged documents in connection with all 141 cases. We agreed that I would review all electronically maintained files to be supplied via e-mail, disc, drop-box or any other file sharing mechanism, after [Defendant] has removed any privileged data. Of course, we will want a privilege log in connection with this production request. Once [Plaintiff has] reviewed the electronic data we will discuss whether there is a need to review the paper files [Defendant] maintains and how that will be accomplished, including an in person review of each file by our office.

i. With respect to request for documents no 17, [Defendant] will provide bank statements and credit card statements evidencing how the filing fees were paid.

j. With respect to request for documents no. 18, Mr. Batista will provide any forms he uses in preparing bankruptcy documents for filing, such as form requests for information provided or other forms he uses in connection with the preparation of petitions, schedules and statement of financial affairs.

*Oppelt Certification* ¶ 15.

17. On November 18, 2022, Defendant's counsel responded to requests by Plaintiff's counsel for the additional document requests stating, in part, as follows:

a. [Defendant] isn't in possession of accounting documents regarding the FSF loans and client payments. While those aren't totally inaccessible, they're encompassed within the subpoena directed to Fresh Start, and accordingly all documents responsive to that request should be produced by Fresh Start. As to your mention of Mr. Garrison accepting service on September 2, I'm not aware whether he did; once I put your office in touch with Mr. Garrison, I stepped out of the loop. If Fresh Start hasn't responded to the subpoena yet, I'll be glad to do what I can to facilitate getting them to respond, but I need to reiterate what I previously told you – I don't represent Fresh Start. If you can send me a copy of Fresh Start's acceptance, so that I have some basis to tell them what you believe their response obligation/deadline is or was, I'll get in touch with them. In the meantime, here's a link to numerous documents that I believe are both responsive to item one and RFP 1-5, and I believe were previously produced.

b. In regard to item number 2 below, [Defendant] is still pulling together account information, but assured me he can get it to me in time for me to turn it around to you within a week from today. [Defendant] did agree to do my best to get you those by the 15th, but I underestimated the task; I now have [Defendant's] best estimate and promise to get those documents to me, and I'll turn them around to you immediately when I receive them within the next week.

c. There are no documents responsive to item number 3 in [Defendant's] possession. Any communications from clients about payments, would have been directly between the clients and Fresh Start.

d. In regard to item 4 below and RFP #10, [Defendant] has no documents in his possession that are responsive to RFP #10. Relevant information was passed along to [Defendant] verbally by his clients, and all such information ended up in the documents filed in the respective clients' bankruptcy cases, whether filed initially or by amendment/supplement. To the extent that relevant information you mention in item #4 below is in FSF's possession, again, I'll be glad to see if I can facilitate some response, but I need to be able to tell Fresh Start what their service date and response date was for any subpoena, so please pass along any acceptance of service by Fresh Start.

e. In regard to item number 5 below, [Defendant] will not be withholding any documents under a claim of privilege. [Defendant] is checking his files, but believes no further documents exist. When information was presented to him by the client, that information ended up in a supplemental filing, and he doesn't have any other documentation than what ended up filed with the court.

f. In regard to item number 6, all documentation relative to the Alward matter was appended to [Defendant] motion to reopen the case. I can access that ECF docket, download the motion to reopen, and produce to you the exhibits to that motion if necessary, but those exhibits are the only documentation Mr. Batista has that are responsive to RFP #12. Let me know if you need me to do that.

g. As to your item #7 below and RFP #14, [Defendant] is double checking his files but believes there is no further documentation relative to the fees in excess of what a routine case and fee might be. The information demonstrating the higher fee charged in those cases, was provided by his clients through various personal meetings, and that information is included in the schedules and other filings in their bankruptcy cases. Again, [Defendant] is double checking his files and I expect a follow up answer from him within the week.

h. In regard to your item #8 below and RFP 15, I renew the objection set forth in our response to RFP #15. The request is so broad that it subsumes all others, seeking every single document imaginable that might somehow relate to 141 cases. I'm prepared to discuss any reasonable narrowing of this request to what might truly be needed, relevant to this dispute, and reasonable in light of [Defendant's] moderate means, but I believe a document request that is essentially "everything, just everything" is simply objectionably overbroad.

i. In regard to item #9 below, [Defendant] is obtaining credit card statements regarding the payment of filing fees. My understanding is that those credit card accounts were also used for charges utterly unrelated to any case at issue in regard to the trustee's motion, so the statements need to be reviewed and possibly redacted. Within the next few days I'll have a more solid timeline

from [Defendant] on how quickly he can get that done and the statements produced.

j. In regard to item #10 below, there are no additional responsive documents in Mr. Batista's possession. He prepared statements and schedules with clients during in-person meetings, and any informal notes that may have been involved were discarded after the information was input into the statements and schedules that were eventually filed.

*Oppelt Certification* ¶ 16.

**LEGAL ARGUMENT**:

***Defendant Should Be Compelled to Produce Documents Requested and Produce Documents By a Date Certain***

Federal Rule of Civil Procedure 37, made applicable by Federal Rule of Bankruptcy Procedure 7037, provides in part that "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery."

In this case, Defendant has not produced most of the documents requested by Plaintiff after almost 3 months. Specifically, Defendant has failed to produce, without providing a sound legal or factual basis for such failure, the following:

1. Requests numbers 1 through 5 (Accounting records relating to FSF)—although Defendant initially stated he did not have such records, he now says that they are "not totally inaccessible." The fact that he has access to these documents, means he must produce them. FSF has failed to respond to the subpoena issued by the Plaintiff and Plaintiff has no idea when or if FSF intends to respond. Defendant and his relationship with FSF are central to Plaintiff's complaint and Defendant should be compelled to produce the requested documents.
2. Request no. 6 (bank statements used in connection with FSF accounts);--Defendant has failed to produce any bank statements since the initial request was made in August

2022. Defendant should be compelled to immediately turnover the requested documents. Defendant has made no additional objections to this request and has agreed to produce them but has failed to do so.

3. Request Nos. 7 and 8 (e-mails and communications with clients regarding payments to FSF). The agreements between FSF and Defendant include references that clients can renegotiate payment terms with Defendant if they are unable to pay and Plaintiff wants all documents relating to any delinquencies in payments and communications between Defendant and his clients regarding such delinquencies. Plaintiff has no confidence that Defendant has looked for any communications he may have received or sent electronically as Defendant has failed to produce any electronic communications whatsoever. Defendant should either produce such electronic communications or certify that he has conducted a thorough search for such documents and has not been able to find any relevant communications. Given the number of debtors who engaged the services of Defendant via FSF, Plaintiff finds it incredible that not one debtor discussed a renegotiation of the payment terms with Defendant.

4. Requests no. 10 (documents relating debtors' ability to pay)— Defendant's answer to the complaint and responses to interrogatories indicates that if a bank account was not listed there was none to list. ECF No. 3 at ¶ 40. These statements contradict the Defendant's document requests indicating that FSF required that all of the debtors paying FSF have bank accounts. At least 15 debtors who failed to identify bank accounts, paid via FSF and therefore must have had a bank account at the time of filing. Plaintiff seeks all documents that evidence Defendant's due diligence as indicated in his answer to the complaint. If Defendant has no such documents, including any e-mails or paper copies of documents provided to Defendant by his

clients, Defendant should amend his answers to interrogatory numbers 13 to 15 to make clear that he never requested, received or retained such documents.

5. Request No. 11 (all documents relating to information provided by debtors related to amendments filed by Defendant). Defendant indicates that he is continuing to look for such documents but does not believe that any such documents exist. If Defendant filed amendments in addition to those identified in the complaint, he should know after three months of delays in responding to discovery requests. If Defendant failed to obtain or review bank statements, credit card statements, tax returns or pay advices prior to filing a debtor's petition, or the subsequently filed schedules and statement of financial affairs, he should supplement his answers to interrogatory numbers 13 to 15 to make that clear. Defendant should further be required by a date certain to conduct a thorough search and produce the requested information or certify that he has done so and there is no electronic or other documents to produce.

6. Request no. 12 (documents relating to the Alward case). Defendant provides no evidence of any communications between Mr. Alward and Defendant. Again, Defendant indicates that he did not communicate with his clients via e-mail, which Plaintiff finds difficult to fathom. Especially considering he has e-mails from Mr. Alward's former attorney and the chapter 7 trustee and that according to Defendant's responses to interrogatory 21, Mr. Alward moved to Texas following the filing of his bankruptcy case. Plaintiff has no confidence in Defendant's statements given that he has failed to produce any documents related to his representation of his clients, including draft schedules and statement of financial affairs, documents used to prepare the schedules and statement of financial affairs, or e-mails relating to the preparation and filing of the petition, schedules and statement of financial affairs. Defendant

should be required to produce the requested information or certify that he has done so and no documents exist.

7. Request no. 14 (documents evidencing the fees charged in excess of $2,800). Defendant's attests that he believes no documents substantiating the charge of fees in excess of $2,800 exists. This is so even though, Defendant answered Plaintiff's complaint and interrogatory numbers 23 and 24, indicating that he charged fees in excess of $2,800 based on "supplemental services" provided. Defendant's response to interrogatory number 24 indicates that Defendant is compiling information on these cases and will supplement the information when compiled. Defendant has not supplemented the interrogatories or provided any additional documents in connection with Request No. 11. Defendant should be required to produce the requested information by a date certain or amend his response to interrogatory number 24 to indicate that he has no additional information as to why fees in excess of $2,800 were charged.

8. Request no. 15 (debtors' files). Much of Plaintiff's complaint deals with Defendant's lack of due diligence in preparing a bankruptcy case for filing, including failing to verify financial information, failing to review financial information, and failing to determine the benefits and risks of filing a chapter 7 case. To determine what, if any, type of due diligence Defendant conducted before filing a debtor's case, Plaintiff needs to review Defendant's files in each of the 141 cases identified. If Defendant never reviewed or obtained tax returns, pay advices or any other documents necessary to verify the accuracy of the petition, schedules and statement of financial affairs, this should become evident by the review of the information in Defendant's possession. Plaintiff has offered to review them at Defendant's office or to review electronic data

in any form convenient for the Defendant. This information relevant and necessary in determining Defendant's practice in ensuring debtors were properly advised of the risks associated with filing a bankruptcy case, the need to file, and whether Defendant verified the information contained in the schedules and statement of financial affairs. If Defendant truly has no such documentation, e-mails, or communications evidencing his due diligence, such lack of information will provide strong corroborating evidence supporting the allegations raised in Plaintiff's complaint. If Defendant desires to stipulate that he never reviewed any financial documents in connection with the preparation of his clients' petitions, schedules and statement of financial affairs, Plaintiff will not need any additional information.

9. Defendant attests that he has no documents regarding amendments made to a debtor's schedules and statement of financial affairs, no documents which would explain fees more than $2,800, no documents evidencing a debtor's ability to pay FSF, and no forms or other documents used to prepare the schedules and statement of financial affairs. Given Defendant's attestations in this regard, the files he retained on behalf of his clients, if any, will likely be quite thin. If Defendant failed to keep any files on behalf of his clients, he should supplement Plaintiff's interrogatory number 13, 14, 23, and 24 to so state. Further, if Defendant deleted all electronic communications between himself and his clients, he should state that as well.

10. Request No. 17 (documents relating to the advancement of the filing fee). Plaintiff needs to determine which debtors' filing fees were advanced by Defendant as Defendant denied that he advanced any of the filing fees on behalf of his clients in his answer to Plaintiff's complaint. ECF No. 81-90. Further Defendant's lack of diligence in preparing petitions, schedules and statements and his failure to disclose relevant

information relating to his employment, requires Plaintiff to corroborate the information disclosed by Defendant in connection to the advancement of the filing fee. If Defendant advanced the filing fees on behalf of his clients, he should have a record of payments made to the Court on the debtor's behalf. Plaintiff wants to see those records. If Defendant desires to stipulate that he advanced the filing fees on behalf of the debtors identified in Plaintiff's complaint, Plaintiff will accept such stipulation as to those facts, and not require the documentation.

Defendant's lack of cooperation has resulted in unnecessary and unreasonable delay and the Debtor should be compelled to produce all requested documents immediately.

**CONCLUSION:**

For the reasons set forth above, Plaintiff respectfully requests the entry of an order compelling the Defendant to produce the requested documents immediately or by date, and granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

ANDREW R. VARA
UNITED STATES TRUSTEE
REGIONS 3 AND 9

By: */s/ Maggie McGee*
Maggie McGee
Trial Attorney

Dated: 11/23/2022